IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **VERNITA B. INDIVIDUALLY AND AS PARENT/GUARDIAN/NEXT FRIENDS OF S.S., A MINOR INDIVIDUAL WITH A DISABILITY** *Plaintiffs,* <br><br> v. <br><br> **KILLEEN INDEPENDENT SCHOOL DISTRICT** *Defendant.* | CIVIL ACTION NO. 6:20-cv-900 |

## PLAINTIFFS' ORIGINAL COMPLAINT

Comes now, Vernita B., individually and as parent /guardian/next friend of S.S., (hereinafter, "Plaintiff" or "Parent"), a minor individual with a disability, (hereinafter, "Plaintiff S.S." or "S.S" or "Student"), collectively termed Plaintiffs herein, and file this Complaint against Killeen Independent School District (hereinafter, "KISD" or "District"), pleading in the hypothetical and alternative, hereby state as follows:

### I. THE PARTIES

1. Plaintiffs, at all times relevant to this suit, have resided within the city of Harker Heights, Bell County, Texas.

2. S.S. came to live with her grandmother Vernita B. when her mother was receiving cancer treatment. S.S. has continued to live with her grandmother after her mother passed away in 2018. Plaintiff Vernita B. is the parent of S.S. as defined by IDEA, 20 U.S.C. § 1401(23).

3. S.S. is a minor individual with a disability as defined by IDEA, 20 U.S.C. § 1401(3)(A) and a qualified handicapped person as defined by Section 504 of the Rehabilitation Act of 1973. 34 C.F.R. § 104.3 (l).

4. S.S. is 16 years-old and has recently completed the tenth grade at Harker Heights High School in Killeen, Texas. S.S. has been diagnosed, *inter alia*, with attention deficit hyperactivity disorder ("ADHD").

5. KISD is a local educational agency as defined by IDEA, 20 U.S.C. § 1401 (19), and as such is obligated to safeguard Plaintiffs' rights under IDEA and provide a free appropriate public education to S.S., as that phrase is used in the IDEA, 20 U.S.C. §1401(8), and is subject to the requirements of 20 U.S.C.§ 1401 *et seq.,* and the regulations promulgated thereunder

## II.   JURISDICTION AND VENUE

6. Jurisdiction is claimed under the Individuals with Disabilities Education Act, 20 U.S.C. §§1400-1482, as Parent and S.S. are aggrieved by the findings and Decision of the Special Education Hearing Officer ("SEHO") in a special education due process hearing conducted pursuant to the IDEA, 20 U.S.C. § 1400 *et seq.,* the Americans with Disabilities Act, 42 U.S.C. §§12101 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504" or "RA").

7. Venue is predicated upon 28 U.S.C. § 1391(b)(1) based upon the residence of the Plaintiffs and Defendant and upon 28 U.S.C. § 1391(b)(2) based upon the location of the subject matter of this action.

## III.   FACTUAL BACKGROUND AND ALLEGATIONS

### Educational History at KISD

8. When S.S. was seven-years-old, she was evaluated for a specific learning disability ("SLD") by KISD. The KISD evaluator opined that S.S. did not meet the criteria for any of the reading-based SLD eligibilities (basic reading skills, reading fluency, and/or reading comprehension) under the IDEA.

9. In August 2011, a private psychologist evaluated S.S. The psychologist assessed S.S.'s attention, behavior, and reading skills and concluded that S.S. had a "clear case of ADHD

combined type," as well as "a clear case of reading disorder or referred to in the school as dyslexia." The psychologist concluded by recommending S.S. receive additional assistance for her reading disorder, specifically assistance in the areas of rate, fluency, and accuracy of reading.

10. In September 2011, KISD convened an Admission, Review, and Dismissal Committee ("ARDC") meeting for S.S. The ARDC determined S.S. was eligible for special education and related services as a student with an Other Health Impairment ("OHI") due to her ADHD diagnosis. KISD also acknowledged S.S. had a reading disability, but only under Section 504 of the Rehabilitation Act.

11. S.S. remained in the general education setting for the 2012/13 school year with "inclusion support" and general education dyslexia services. S.S. did not have a behavior intervention plan ("BIP").

12. In September 2014, KISD conducted a Review of Exiting Evaluation Data ("REED") for S.S. KISD did not recommend obtaining updates assessment of S.S. at that time. It was determined S.S. remained eligible for special education services as a student with OHI. S.S.'s general education placement with inclusion support was continued.

13. During the 2014/15 school year, S.S. was placed, in part, in a Content Mastery setting.

14. For the 2015/16 school year, S.S. began attending Union Grove Middle School in KISD.

15. KISD convened S.S.'s annual ARDC in October 2015. S.S. remained in the general education setting with inclusion support.

**Behavioral Issues**

16. In April 2016, KISD convened a Revision ARDC meeting for S.S. It was determined S.S.'s behavior interfered with her ability to progress in the general education curriculum as S.S. is easily distracted by peers and that distraction can lead to S.S. shouting an becoming upset;

3

disrupting the classroom with emotional outbursts and tantrums; noncompliance; defiance of authority; verbal aggression; and physical aggression.

17. During the 2015/16 school year, S.S. had received three serious referrals for behavior: two for "assault by contact" and one for "conduct towards others." Accordingly, S.S.'s ARDC requested a counseling evaluation be conducted.

18. Prior to the completion of the counseling evaluation, on May 6, 2016, while walking in the hallway to class, S.S. told a peer to "walk faster." After a verbal exchange, a student punched S.S. in the ear, and S.S. fell to the ground. While on the ground, S.S. was punched in the face several times. The school nurse saw S.S., where she received an ice pack for her face, and S.S. completed a voluntary statement for the KISD Police Department. Additionally, S.S. was required to sign a "stay away contract," which stated she agreed to stay away from the student who had assaulted her.

19. On May 9, 2016, KISD completed its counseling evaluation of S.S. S.S. reported that she had been bullied by peers in the past. S.S.'s behavior was assessed using the Connors Comprehensive Behavior Rating Scales. S.S.'s teachers rated her as "very elevated" in the areas of upsetting thoughts, defiant/aggressive behavior, academic difficulties, math, and hyperactivity/impulsivity. The evaluator concluded that S.S.'s behavioral problems were impacting her in academic and social settings. Accordingly, the evaluator recommended S.S. receive counseling as a special education related service.

20. KISD revised S.S.'s IEP to include special education counseling weekly for the first three weeks of the 2016/17 school year then five sessions per nine weeks for the remainder of the school year.

## 2016/17 and 2017/18 School Years

21.     In August 2016, KISD convened an ARDC meeting. Dyslexia was listed as one of S.S.'s disabilities. S.S. was provided general education accommodations for her dyslexia and ADHD.

22.     On September 26, 2016, KISD completed an updated Full Individual Evaluation ("FIE") for S.S. The FIE assessed S.S. for potential eligibility in the categories of Specific Learning Disability and Emotional Disturbance. KISD found S.S. did not meet the criteria for either category. KISD's evaluator recommended continuing S.S.'s eligibility as a student with OHI due to her ADHD.

23.     The FIE also included a Functional Behavior Assessment, which determined S.S. required a behavior intervention plan ("BIP") targeting the following behaviors: negative physical contact/horseplay towards peers; not following directions; and tardy/late to class. A BIP was implemented.

24.     Parent disagreed with KISD's September 2016 evaluation and requested an independent educational evaluation ("IEE"). KISD granted Parent's request.

25.     On March 30, 2017, an independent evaluator completed S.S.'s IEE. The IEE included evaluations of S.S.'s cognitive/intellectual ability, academic achievement, and social/emotional functioning.

26.     S.S.'s cognitive scores indicated she had below average cognitive functioning overall, which were consistent with previous assessments performed by KISD.

27.     Scores on the social-emotional assessments identified "significant behavioral concerns" relating to executive functioning skills and behaviors specific to ADHD. The independent evaluator noted that S.S. "continues to exhibit behaviors that may interfere with her ability to make adequate progress in the general education curriculum."

28. The independent evaluator concluded that the OHI eligibility category was still appropriate for S.S., but she recommended KISD reevaluate S.S.'s program and educational needs. Specifically, it was noted that S.S. was only receiving services in the general education setting, including general education support for her dyslexia despite it being a disability covered by IDEA. The independent evaluator recommended KISD make a decision whether S.S.'s dyslexia services should be provided in the general education or the special education setting.

29. Despite implementation of the BIP, S.S. received 12 disciplinary referrals during the Fall 2016 semester alone. The referrals included three assaults on other students, multiple verbal altercations, horseplay, tardiness, and failures to complete work.

30. During the Spring 2018 semester, S.S. received three additional disciplinary referrals.

30. One referral was for running through the hallway and jumping on a peer's back, causing the other student to fall face down on the floor. Another referral was for shoving another student into a pillar in the library. Staff intervened and took S.S. to the office. The third referral was for a verbal altercation with another student where S.S. dropped her backpack. The referral was initially coded as a "fight" but downgraded to a "disturbance" after the Parent appealed the referral. However, S.S. received two-days of in-school suspension for this incident.

31. No significant changes were made to S.S.'s educational programming.

**2018/19 School Year – High School**

32. In Fall 2018, S.S. began ninth grade at Harker Heights High School in KISD.

33. Beginning in September 2018, S.S. was targeted by another student and was repeatedly bullied and harassed. Over a two-week period, this student attempted to assault S.S. on no less than three separate occasions.

34. On September 13, 2018, S.S. was suspended for two-days and given campus prohibition

6

following an interaction with this other student. However, after KISD reviewed S.S.'s BIP, the suspension was withdrawn.

35. However, perseverance paid off for S.S.'s tormentor, and on September 24, 2018, the other student succeeded in assaulting S.S. causing S.S. injury.

36. In December 2018, during S.S.'s annual ARDC meeting, Parent requested an FIE of S.S., and KISD agreed to the request. The FIE was completed on March 8, 2019.

37. As part of the FIE, S.S. was evaluated in the areas of cognitive functioning, academic achievement, and adaptive behavior. S.S.'s cognitive scores were in the "low average" range in the areas of verbal comprehension, visual/special reasoning, and fluid reasoning. Indicative of ADHD, S.S. cognitive scores were in the "very low" range for working memory, and processing speed. S.S.'s Full Scale IQ was determined to be 73, which is in the "very low" range. S.S.'s adaptive behavior scores fell in the low average/average range across domains and were commensurate with age expectations.

38. The KISD evaluator concluded that S.S. had normative academic weakness in basic reading, reading comprehension, reading fluency, math calculation, math reasoning, oral expression, and listening comprehension. However, because S.S.'s cognitive profile showed "pervasive weaknesses," as opposed to a "pattern of strengths and weaknesses," the evaluator determined S.S. did not meet the criteria for a Specific Learning Disability nor did S.S. meet the criteria for an Intellectual Disability because her adaptive behavior was not impaired.

39. The evaluator concluded that S.S.'s learning difficulties were likely the result of a general cognitive weakness or attention difficulties, or the combination of both. The evaluator recommended S.S. remain eligible as a student with OHI for her ADHD.

40. The KISD evaluator made detailed recommendations regarding interventions, which

would support S.S.'s academic progress. However, KISD did not incorporate its own recommendations into S.S.'s IEP during the 2018/19 or 2019/20 school years.

41. Bullying of S.S. continued. On February 13, 2019, another student threw a rock at S.S. Staff intervened and convinced S.S. to walk away. However, S.S. was sent to the office, and pursuant to her BIP was told to complete a "processing sheet."

42. On February 27, 2019, the student who had assaulted S.S. in September, returned to Harker Heights High School after being placed in a disciplinary setting after first assaulting S.S.

43. This student was placed in two of S.S.'s classes. S.S. understandably felt anxious and unsafe and asked to call Parent. However, S.S. teacher would not allow S.S. to make such a call. After learning of this, Parent requested a safety plan be put in place to protect S.S. from further bullying, harassment, and assault.

44. Unfortunately, S.S. continued to be antagonized and bullied by other students. On April 11, 2019, a student spat on S.S. S.S. reported the incident to school administration. The bullying continued.

45. On April 26, 2019, three students approached S.S. and began antagonizing her, which resulted in a verbal altercation. A campus police officer intervened and instructed the students to leave the area. However, the verbal altercation continued and the other students approached S.S. again. As the students approached, one of S.S.'s friends held her back so she would not get closer. S.S. began to struggle against her friend. The campus police officer again intervened, separated the students, and walked S.S. to the counselor. At the counselor's S.S. completed a "processing sheet" despite it apparent ineffectiveness.

46. Parent was called and told to pick S.S. up. When parent arrived, Parent was informed S.S. was being suspended for three days for "defiance."

47. During the 2018/19 school year, S.S. was able to pass all of her core classes. However, her final passing grade in Algebra I and Biology are likely the result of S.S.'s general accommodation of being permitted to redo tests and assignments where she initially received a failing grade as opposed to mastery of content.

**Dispute and Settlement of Claims**

48. On May 15, 2019, Parent settled pending claims with KISD and released claims arising before April 25, 2019. Accordingly, Parent did not and is not raising any claims for any events occurring before April 25, 2019, and such information is only being provided as necessary factual background.

**2019/20 School Year**

49. During the summer of 2019, Parent requested an IEE of S.S. KISD declined to provide the IEE and instead filed a Request for Special Education Due Process Hearing to defend its evaluation. Parent withdrew her request for an IEE, and the due process proceeding was dismissed without prejudice on September 1, 2019.

50. On October 29, 2019, KISD convened an annual ARD meeting for S.S. and produced a new IEP for her.

51. The ARDC reviewed S.S.'s assessment result and noted that she had not met passing standards for the state standardized exam, STAAR English I End of Course Assessment, on either of her first two attempts. The IEP notes that Parent would be provided with general education "campus boot camp information" to prepare S.S. for her third attempt to pass the assessment.

52. At the time of the meeting, S.S. was passing all her classes using her accommodations and modifications. However, S.S. had not mastered all of her academic goals from the previous

9

year.

53. KISD continued S.S.'s accommodations, including allowing her to redo any test and assignment she failed. Also, based on Parent's request, KISD added an accommodation to allow S.S. to complete an alternate test/assignment if she was unable to achieve a passing grade after redoing a failed test or assignment. The alternate test/assignment would be completed during S.S.'s at-home private tutoring.

54. S.S. was given academic IEP goals in all four core subjects (reading, math, science, and social studies). The prior year she only had goals for reading and science.

55. S.S. had not mastered her behavior IEP goals the prior year. However, the IEP goals regarding the use of "responsible, respectful language when speaking to peers" and "asking to move if distracted by others" were discontinued without explanation.

56. The IEP goal regarding "positive physical interactions with peers" was continued despite the baseline data indicating S.S. had mastered that specific goal. New vague goals targeting successful completion of the "alternate" tests/assignments, "positive interactions with peers," following directions, and being on time for class were added.

57. The October 29, 2019 IEP also contained a transition/vocation plan for S.S. The plan noted S.S. took a "district provided interest survey" and that S.S. was interested in a career in oncology. KISD failed to conduct any formal transition or vocational assessments.

58. Moreover, the plan did not contain any transition services. Rather S.S. was provided generic general education advice such as "meet with her counselor to affirm vocational interests align with graduation plan" and to meet with campus club director "if she ever becomes interested in joining a school club or activities." The transition plan states that S.S. plans to live on her own, but states that "no assistance" for post-school adult living or housing was

"requested/needed." The transition services were listed as "classroom training," with the comment that "Student in [sic] enrolled in sciences classes," a requirement for all general education students.

59. Despite proving ineffective, S.S.'s BIP was continued, without any changes, during the October 2019 ARDC meeting.

60. S.S.'s placement remained primarily in the general education setting without modified curriculum or individualized instruction. The only special education services noted on the IEP for the 2019/20 school year is access to a content mastery class for 30 minutes, once per week.

61. S.S. was also placed in a general education accelerated reading instruction program (two 45-minute sessions per week) to prepare her for the retake of the English I End of Course assessment.

62. The IEP also specifies that if S.S. is called to the office, her case manager will also attend the meeting. S.S. was permitted to complete any statements resulting from the behavior incidents at home and then return the statement to school.

63. S.S.'s behaviors continued to decline. On November 7, 2019, S.S. left Harker Heights High School during school hours and boarded a bus to the KISD Career Center, even though she was not a student there. When she arrived, S.S. reportedly hid in the bathrooms. S.S. stated she was at the Career Center to target another student. S.S. received a disciplinary referral and was assigned Saturday detention.

64. On November 13, 2019, S.S. was allegedly seen moving towards the student from the Career Center during that student's lunch period. S.S. was intercepted and completed a "processing sheet."

65. On November 14, 2019, S.S. was allegedly involved in another incident and refused to

complete a processing sheet. However, she "was able to follow her BIP to calm down."

66. On November 15, 2019, S.S. was approached from behind by a student who began to verbally antagonize S.S. S.S. dropped her backpack and began to physically fight this student. After staff broke up the incident, the campus assistant principal mistakenly determined S.S. had incited the incident and that she had caused serious bodily injury to the other student. However, video surveillance footage showed that the other student had skipped class specifically to find S.S. and assault her. S.S. received a three-day out-of-school suspension as a result of the incident.

67. S.S. was hospitalized due to the mental and emotional trauma caused by the bullying and assaults and was unable to return to school.

68. On November 21, 2019, S.S. received a letter from KISD stating that because of the November 7, 2019 incident at the Career Center, and her purported refusal to identify herself to campus administration, she was placed on "probation" until March 16, 2020.

69. Even though S.S. was in the hospital due to school-based trauma, as a result of the November 7, 2019 incident, KISD proposed removing S.S. to a disciplinary placement in excess of ten school days. On December 4, 2019, KISD convened a Manifestation Determination Review ("MDR") meeting for S.S. S.S.'s parent and a non-attorney advocate attended the MDR.

70. The KISD members of the MDR team summarily and improperly determined S.S.'s behavior was not a manifestation of her disability. Parent urged KISD to consider S.S.'s disability, hospitalization and extensive history of being bullied, antagonized, and harassed by other students. KISD members of the MDR team did meaningfully consider Parent's input and determined S.S. would be removed to the Disciplinary Alternative Educational Program ("DAEP") program at Gateway High School for 45 days. Parent disagreed with the decision.

71. On December 6, 2019, S.S. was moved from an acute care hospital to Metroplex to continue inpatient treatment.

72. S.S. was subsequently transferred to Cedar Crest Hospital so she could obtain extended inpatient services due to the severity of her mental/behavioral needs. S.S. attended an on-site school while hospitalized at Cedar Crest through the University of Texas Charter School Program.

73. Following the MDR, on December 16, 2019, KISD convened a district implemented general education disciplinary review hearing regarding the November 15, 2019 incident. The KISD "hearing officer" reviewed Parent's documents, which included a medical certificate indicating S.S. had been diagnosed with PTSD and also reviewed the video of the incident.

74. The hearing officer found the other student was the instigator of the assault. Nevertheless, the district hearing officer upheld the DAEP placement, but reduced the placement to 20 days from 45 days in violation of the IDEA.

75. S.S. remained hospitalized at Cedar Crest Hospital until February 26, 2020. When Parent attempted to reenroll S.S. in KISD, she was told that S.S. would have to report to the DAEP instead of Harker Heights High School.

76. After several days of discussion, KISD agreed that S.S.'s private placement in Cedar Crest would "count" towards her days in DAEP and permitted S.S. to reenroll at Harker Heights. S.S. returned to Harker Heights on March 2, 2020.

77. Despite S.S.'s changing needs, KISD did not convene an ARDC meeting or propose any evaluation or transition plan for S.S. following her reenrollment.

78. On March 3, 2020, KISD unilaterally withdrew S.S. from Junior Reserve Officer Training Corps ("JROTC'), and enrolled S.S. enrolled in a Child Development class instead.

79. The ARDC did not approve this change and the parent objected to the change as JROTC is one of S.S.'s motivators for attending school and has a positive impact on her mental health.

80. S.S. was removed from JROTC due to the November 15, 2019 incident and was ineligible to even reenroll for the 2020/21 school year.

**The Special Education Due Process Hearing**

81. Parent initially filed he *pro se* request for special education due process hearing on March 4, 2020. On March 18, 2020 the Special Education Hearing Officer granted KISD's Notice of Insufficiency of Complaint and ordered Parent to amend her Request for Special Education Due Process Hearing.

82. On March 19, 2020, Parent requested KISD return S.S. to JROTC. Parent was informed that no class schedules could be switched per a district policy/mandate and despite the IDEA's mandate that the ARDC has the authority to determine courses, placement, and programming.

83. Parent obtained counsel and on March 31, 2020. Parent filed her First Amended Request for Due Process Hearing asserting KISD failed to provide S.S. with a free appropriate public education during the 2019/20 school year: (1) by failing to respond to S.S.'s clearly changing behavioral, emotional, and academic needs; and (2) because S.S.'s IEP is not reasonably calculated to enable her to make academic progress including the IEP containing a deficient transition plan.

84. The due process hearing was held on June 23-25, 2020. On August 14, 2020, the Special Education Hearing Officer, in a written decision, ruled in favor of KISD. *See* attached Exhibit A herein incorporated by reference.

**IV. FIRST CAUSE OF ACTION**

85. Plaintiffs refer to, and incorporate by reference, all of the preceding paragraphs as though

fully set forth herein.

86. The SEHO's Decision does not correctly interpret the standards enunciated in the IDEA, its regulations, and Chapter 89 of the Texas Administrative Code.

87. The SEHO's findings of fact and conclusions of law are erroneous, contrary to established case law, and unsupported by the preponderance of the evidence contained in the Administrative Record ("AR").

88. The SEHO erred when she erroneously assessed the facts and erroneously applied the law to the facts. By way of example only:

   a) the SEHO erred in finding KISD developed an IEP that is reasonably calculated to enable S.S. to make academic and nonacademic progress appropriate to her circumstances despite KISD's failure to appropriately reevaluate S.S. in response to Student's changing behaviors and hospitalizations;

   b) failure to provide a transition plan so S.S. could appropriately transition from a hospital setting to KISD;

   c) failure to provide S.S. with specialized instruction and related services tailored to her unique needs; and

   d) KISD's impermissible and inappropriate use of disciplinary measures, including failing to make an IDEA compliant determination during the Manifestation Determination Review ("MDR") and conducting general education disciplinary hearing to punish Student for behaviors which are manifestations of her disability.

89. The SEHO's Decision is not based upon a fair and knowledgeable review of the evidence presented in the hearing.

   V.     SECOND CAUSE OF ACTION (RA/ADAA CLAIMS)

90. Plaintiffs refer to, and incorporate by reference, all of the preceding paragraphs as though fully set forth herein.

91. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and its implementing regulations require that each state that receives disbursements from the federal government, including the state's political subdivisions, such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules.

92. To the degree that a policy or practice hinders honest consideration of a disabled student's unique and individualized needs and fails to accommodate that child's disability and keep the student safe; it violates Section 504 of the RA.

93. KISD and its schools are facilities, and their operation constitutes a program and services for ADAA purposes.

94. KISD receives federal funds pursuant to the IDEA and is subject to the ADA, as amended, Section 504 of the RA, and all regulations related thereto that must be followed in a school setting.

95. S.S. is a qualified individual pursuant to Section 504 and the ADAA with the disabilities of Attention Deficit Hyperactivity Disorder, which impact her major life activities or learning, writing, communicating, and participating in educational activities.

96. As a qualified individual with disabilities pursuant to the RA and the ADAA, S.S. is entitled to the full protections and benefits of those laws, including the right to a free appropriate public education under Section 504 and the right to be free from discrimination pursuant to RA and the ADAA.

97. KISD is required to, but failed to, provide S.S. a "free appropriate public education" pursuant to the RA separate and distinct from its duties to not discriminate against her as a qualified individual with a disability.

98. Section 504 of the RA prohibits the exclusion of persons with disabilities from the participation in, or being denied the benefits of, or being subjected to discrimination under, any program or activity receiving federal financial assistance.

99. KISD is liable under both the ADAA and Section 504 of the Rehabilitation Act of 1973 for the vicarious actions of its agents, employees, and/or servants.

100. KISD has prohibited S.S. from participating in the Junior Reserve Officer Training Corps (JROTC) at Harker Heights High School due to a disciplinary incident for which S.S. was determined not to be at fault and during which S.S. exhibited behaviors consistent with her disability and explicitly addressed by her Behavior Intervention Plan ("BIP"). Consequently, KISD has additionally determined that S.S. will not be permitted to participate in JROTC during the 2020-2021 school year as a result of this incident.

101. As a direct and proximate result of the discrimination he faced, S.S. has sustained injury.

## VI. PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court accept jurisdiction, receive all of the records of the administrative proceedings as required by the IDEA, incorporate all of the facts and circumstances set forth above, accept additional evidence as will be offered, and enter judgment against KISD and grant the relief requested in Plaintiff's due process hearing request and closing brief. Specifically, Plaintiffs request this Court:

i) Enter a judgment REVERSING and VACATING the Special Education Hearing Officer's decision and erroneous factual findings and conclusions of law;

ii) Find KISD procedurally and substantively denied S.S. an IDEA FAPE;

iii) Find KISD conducted a procedurally and substantively deficient MDR;

iv) Find KISD denied the parents meaningful parental participation;

v) Find KISD impermissibly discriminated against S.S. based on her disability;

vi) Find KISD violated the RA in failing to provide S.S. a 504 FAPE;

vii) AWARD Plaintiffs all relief requested in its due process hearing request and closing brief;

viii) ORDER additional relief this Court deems appropriate;

ix) AWARD Plaintiffs reasonable attorneys' fees and related costs, incurred in the administrative proceedings;

x) AWARD Plaintiffs reasonable additional attorney fees and costs incurred in pursuing the current action;

xi) AWARD Plaintiffs prejudgment and post-judgment interest on any and all awards of fees and permissible costs, and

xii) AWARD such other and further relief to which Plaintiffs are entitled.

Respectfully submitted this 30th day of September 2020.

                Cuddy Law Firm, PLLC
                3809 S. 2nd Street, Ste. B300
                Austin, TX 78704
                Telephone: (512) 649-3191
                Facsimile: (512) 649-1217

                By: */s/ Elizabeth Angelone*
                Elizabeth Angelone
                State Bar No. 24077349
                Email: eangelone@cuddylawfirm.com
                Counsel for Plaintiffs